George NEIDE, Plaintiff,

v.

**GRAND COURT LIFESTYLES, INC., Defendant.**

No. 98–2273–KHV.

United States District Court, D. Kansas.

Feb. 25, 1999.

Kevin J. Berger, Crews, Waits, Brownlee & Berger, Kansas City, MO, Phillip K. Weber, Kansas City, MO, for Plaintiff.

Paul D. Seyferth, John K. Power, Robert C. Johnson, Husch & Eppenberger, Kansas City, MO, for Defendant.

## *MEMORANDUM AND ORDER*

VRATIL, District Judge.

George Neide brings suit against his former employer, Grand Court Lifestyles, Inc., claiming unlawful termination in violation of the Employee Retirement Income Security Act ("ERISA") and denial of rights under the Family and Medical Leave Act ("FMLA"). This matter comes before the Court on defendant's *Motion For Summary Judgment* (Doc. # 37) filed December 14, 1998, and defendant's *Motion For Leave To File Its Supplemental Motion For Summary Judgment Out Of Time* (Doc. # 40) filed December 15, 1998. For reasons stated more fully below, both motions are sustained.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l. Inc. v. First Affiliated Securities, Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on

ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson* at 251–52, 106 S.Ct. 2505.

## Factual Background

The following facts are uncontroverted or, where controverted, viewed in the light most favorable to plaintiff.

On August 3, 1995, George Neide began work with Leisure Centers, Inc., in Overland Park, Kansas. He worked for Leisure Centers and later for Grand Court Lifestyles, Inc., an apartment facility for retired and senior citizens, as an air conditioning and heating maintenance worker.[1] On June 19, 1996—after nearly a year on the job—plaintiff received an employee handbook. He also signed an acknowledgment which stated "I understand that it is my responsibility to keep my employer fully informed of changes in my personal status, such as telephone number, address, marital status and/or number of dependents." Plaintiff testified at his unemployment compensation hearing that he read the handbook.

The employee handbook contains Grand Court's policy on attendance. It states that

> [in order] to effectively serve our valued residents, we expect you to keep us informed of your status when you are off work because of illness or accident. If you fail to notify your supervisor after two (2) consecutive workday absences, you will be terminated for voluntary job abandonment.

The handbook also discusses Grand Court's policy on medical leaves of absence, requiring employees

---

1. Leisure Centers, Inc., was affiliated with Grand Court Lifestyles, Inc., and its predeces- sor. The Court refers to plaintiff's employer as "Grand Court."

to keep your supervisor informed as to the status of your condition and the expected date of return. Failure to maintain such contact on a regular basis could result in the loss of approved leave status.

The handbook also contains a section which addressed the FMLA. In pertinent part, it states that the Act provides eligible employees up to 12 weeks of unpaid leave under certain conditions; that Grand Court complies with the Act; and that an eligible employee *"must* submit a written request and a completed 'Certification of Physician or Practitioner' ... for each Family and Medical Leave" request. The handbook also includes a form for requesting FMLA leave.

Plaintiff last worked on July 26, 1996, when he was involved in two automobile accidents. He received hospital treatment for a broken ankle, broken ribs, and other injuries, and was in the hospital for approximately one week. At some point during his hospital stay, plaintiff spoke with Mary Dilday, Grand Court's receptionist. Plaintiff informed her that he had broken his leg in a car accident and was in the hospital. He did not tell Dilday when he would return to work. Dilday passed the information along to Joan Rolleg, executive director of Grand Court's Overland Park facility. After plaintiff's last day of work, Grand Court hired an outside company to take care of its air conditioning and maintenance needs.

Plaintiff received regular pay through his last day of work. Plaintiff had not worked for a full year, and he therefore was not eligible for vacation pay. Nonetheless, for eight weeks from July 26, 1996 to September 20, 1996, Grand Court paid him both vacation pay and earned sick pay.

On September 6, 1996, plaintiff went to Grand Court to pick up a paycheck. He does not recall having any discussions with anyone during that visit.

On September 13, 1996, plaintiff asked Rolleg for additional sick pay. According to Grand Court, he was not eligible for additional sick pay because he had not earned it. Rolleg told plaintiff that Grand Court needed a doctor's note which stated that he was unable to work and indicated when he could return. According to plaintiff, this was the only time Grand Court said that he needed to provide medical forms. After this conversation, Rolleg received a note from plaintiff's doctor which indicated that plaintiff suffered a "total disability" from July 26, 1996 to approximately September 20, 1996. The note did not indicate when plaintiff could return to work.

On September 20, 1996, plaintiff went to Grand Court to pick up another paycheck. During the half hour he was there, plaintiff spoke with various residents and employees, including Rolleg, and perhaps Jun Daniels, his supervisor. The record contains no evidence, however, that plaintiff discussed his sickness, absence or expected return date with Rolleg, Daniels or any other Grand Court employees.

Plaintiff did not request unpaid leave under the FMLA or provide any FMLA-related paperwork to Grand Court.[2] Ac-

2. Plaintiff alleges that in mid-September of 1996, he learned that his health benefits would be ending because his paid days were nearly depleted, and he "informed Grand Court the probability was high that he would not be healed by his next doctors appointment and that he needed unpaid leave." *Memorandum In Opposition To Defendant's Motion For Summary Judgment* (Doc. # 41) filed January 6, 1999 at 2. This allegation is not supported, however, by record evidence. Plaintiff has not properly controverted Grand Court's statement that "Neide did not request unpaid leave under the FMLA," nor has he properly controverted Grand Court's statement that "Neide did not provide any FMLA related paperwork to Grand Court." *See Defendant Grand Court Lifestyles, Inc.'s Memorandum In Support Of Its Motion For Summary Judgment* (Doc. # 38) filed December 14, 1998 at 7 (¶ 13). Nor has plaintiff propounded his own statement of undisputed facts.

Plaintiff's duty, when it comes to identifying a genuine issue of material fact which is sufficient to defeat a motion for summary judgment, is precisely outlined in both D. Kan.

cording to Rolleg, plaintiff was told that he needed to provide a doctor's statement each time he was examined; plaintiff failed to do so, and plaintiff did not call to keep Grand Court informed about his progress and when he would return to work.

On September 28, 1996, plaintiff left Kansas City and went to Pennsylvania. He did not tell anyone at Grand Court about the trip or otherwise contact anyone at Grand Court between September 20, 1996, and October 16, 1996. On October 8, 1996, Grand Court sent a COBRA health benefit continuation notice to plaintiff's address in Prairie Village, Kansas, via certified mail. The letter was returned to Grand Court unclaimed. Grand Court unsuccessfully attempted to contact plaintiff by telephone to determine his status during the first week of October 1996. According to Rolleg, Grand Court left several messages on plaintiff's local telephone number during the first week of October, asking him to call and let Grand Court know when he would return to work.

On October 16, 1996, plaintiff called Grand Court and spoke to the receptionist. He gave her a telephone number in Pennsylvania. Daniels, plaintiff's supervisor, called that number sometime before plaintiff's termination, possibly in the first week of October 1996. He tried to reach plaintiff at that number over three or four days, but got no answer. After he failed in repeated efforts to contact plaintiff, and because plaintiff had not contacted Grand Court, Rolleg concluded that plaintiff had abandoned his job as a "no-call, no show." At some point, Grand Court decided to terminate plaintiff's employment. On this record the Court cannot discern who made the decision or the date on which it was made.

Plaintiff did not contact Grand Court again until November 5, 1996, when he left a message with the Grand Court receptionist. On November 23 or 30, 1996, plaintiff talked to Daniels for two minutes .[3] Daniels told plaintiff that he had been terminated. Daniels explained to plaintiff that they had not heard from plaintiff, that they did not know where he was, and that they had hired someone for his job. In fact, Grand Court had not replaced plaintiff; his position was discontinued and the work was assigned to outside contractors.

## Analysis

### I. Claims Under ERISA, 29 U.S.C. §§ 1132, 1140

#### A. The Complaint Put Defendant On Notice Of Plaintiff's Claim Under Section 1132

In the pretrial order, plaintiff claims that Grand Court discharged him in violation of ERISA, 29 U.S.C. § 1140. *See Joint [Proposed] Pretrial Order* (Doc. # 35) filed December 7, 1998, at 2. Section 1140 makes it unlawful for an employer to discharge a participant or beneficiary of an employee benefit plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...." 29 U.S.C. § 1140. To recover under this sec-

Rule 56.1 and the Court's scheduling order in this case. Because plaintiff has defaulted in that duty, the Court must take as undisputed the facts that plaintiff did not request unpaid leave under the FMLA or provide any FMLA related paperwork to Grand Court.

Plaintiff also alleges that Grand Court did not inform him of his FMLA rights or send him any communication or acknowledgment of the FMLA when he requested unpaid medical leave. In support of this claim, plaintiff cites his complaint, which is insufficient to create a genuine issue of material fact. *See* Rule 56(e), Fed.R.Civ.P. ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule must set forth specific facts" showing a genuine issue for trial).

3. Daniels testified that he spoke to plaintiff not in November, but around the first part of December 1996. Viewing the record in a light most favorable to plaintiff, the Court assumes that the conversation occurred on November 23 or 30, 1996.

tion, plaintiff must prove by a preponderance of the evidence that his discharge was motivated by an intent to interfere with employee benefits protected by ERISA. *E.g., Phelps v. Field Real Estate Co.*, 991 F.2d 645, 649 (10th Cir.1993). Plaintiff has now abandoned his claim under Section 1140, and states that he intends to proceed under 29 U.S.C. § 1132. *See Memorandum In Opposition To Defendant's Motion For Summary Judgment* (Doc. # 41) filed January 6, 1999, at 10 ("ERISA § [ ] 1140 is withdrawn at this time by plaintiff as applicable to this complaint").

Under 29 U.S.C. § 1132(a)(1)(B), a participant or beneficiary of an employee benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Further, a participant or beneficiary may bring a civil action under 29 U.S.C. § 1132(a)(3) "to enjoin any act or practice" which violates the terms of the plan or his protected rights under the Act, or "to obtain other appropriate equitable relief" to redress violations of the Act or to enforce any terms of the plan or provisions of the Act. Grand Court objects that plaintiff is attempting "to broaden the claim beyond that contained in his original complaint," *Joint [Proposed] Pretrial Order* at 2, and argues that the Court should reject plaintiff's attempt to proceed under Section 1132.

Grand Court argues that plaintiff's original complaint "does not refer to § 1132 except insofar as pleading jurisdiction," *see Defendant Grand Court Lifestyles, Inc.'s Memorandum In Support Of Its Motion For Summary Judgment* (Doc. # 38) filed December 14, 1998 at 16, and that it sought damages for "illegal discharge" but nowhere put Grand Court on notice that plaintiff claimed a separate, unrelated breach of rights under a benefits plan. Grand Court therefore asks the Court to dismiss any Section 1132 claim for "damages in the form of unpaid medical claims."

 Out of an abundance (perhaps an over-abundance) of caution, the Court rejects Grand Court's argument. Count I of the complaint does allege interference "with continuing rights to which [plaintiff] was entitled under an employee benefit plan," *Complaint* (Doc. # 1) filed June 17, 1998 at 1, and further alleges that Grand Court "purposefully interfered with the plaintiff's right to continued health benefits under defendant's employee benefit plan, thereby causing plaintiff to lose substantial health insurance benefits." *Id.* at 5. It also alleges that because of Grand Court's denial of his health insurance claims "plaintiff was unable to pay his medical bills." *Id.* Arguably this latter allegation invokes plaintiff's right "to recover benefits due to him under the terms of his plan" or "to enforce his rights under the terms of the plan."[4] This allegation, along with the invocation of jurisdiction under Section 1132, put Grand Court on notice of plaintiff's claim. Had Grand Court entertained genuine concern about the scope of the complaint, it could have filed a motion for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure or sought discovery on the issue. Moreover, Grand Court has not been materially prejudiced by late clarification of plaintiff's claims. Accordingly, the Court construes the pleadings—as superceded by the pretrial order, *see Joint [Proposed] Pretrial Order* at 22, and Rule 16(e), Fed.R.Civ.P.—as stating a claim under ERISA, 29 U.S.C. § 1132, for nonpayment of medical benefits under plaintiff's employee benefits plan. *See Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134–35 (7th Cir.1992).

---

4. In the pretrial order plaintiff claims a violation of § 1140 and seeks redress for "nonpayment of health insurance claims pursuant to an employee benefit plan." *Joint [Proposed] Pretrial Order* at 3. Although plaintiff has now withdrawn his claim under § 1140, the Court must construe all pleadings so as to do substantial justice. *See* Rule 8(f), Fed.R.Civ.P.

## B. Defendant's Motion For Leave To Supplement Its Motion For Summary Judgment

On December 15, 1998, one day after filing its motion for summary judgment, Grand Court filed its *Motion For Leave To File Its Supplemental Motion For Summary Judgment Out Of Time* (Doc. # 40). In that motion, Grand Court argued that it had been prevented from fully briefing the merits of plaintiff's claim under Section 1132 because prior to December 14, 1998, it could not obtain relevant information from its independent benefits plan administrator, a nonparty to this suit. Grand Court noted that its supplemental motion was not a substitute for its pending motion for summary judgment, and argued that a one day delay between filing and serving its motion for summary judgment and serving its supplemental motion for summary judgment would not impose an undue burden on plaintiff or otherwise prejudice him.

Grand Court attached to its motion a copy of its supplemental motion for summary judgment and accompanying brief. The supplemental motion, which was not docketed, challenged the merit of plaintiff's claim under Section 1132; specifically, it argued that plaintiff had failed to satisfy a condition precedent to payment of benefit claims by failing to return a subrogation form to the plan administrator. On February 10, 1999, the Court issued an order to show cause why Grand Court's supplemental motion for summary judgment should not be granted. *See Order To Show Cause* (Doc. # 50) filed February 10, 1999. On February 16, 1999, plaintiff responded to the show cause order.

Plaintiff asks the Court to disallow the supplemental motion for summary judgment, claiming that the benefits plan administrator is Grand Court's agent and custodian and that the information which Grand Court sought should have been readily available so that Grand Court could have filed its motion before the dispositive motion deadline expired. Plaintiff also complains that Grand Court's supplemental motion was hand-delivered to plaintiff's counsel "two days out-of-time." Finally, plaintiff argues that the supporting affidavit from the benefits plan administrator is defective and sets forth not facts but conclusions concerning interpretation of the plan language. *See Plaintiff's Objections And Answers To Defendant Grand Court Lifestyles, Inc.'s Motion For Leave To File Its Supplemental Motion For Summary Judgment Out Of Time* (Doc. # 51) filed February 16, 1999 at 1–3.

Plaintiff's objections are not well taken. Grand Court has shown good cause why it should be granted leave to file its supplemental motion out of time. Plaintiff's objections do not demonstrate that the belated filing will impose an undue burden on plaintiff or otherwise prejudice him. Accordingly, defendant's motion for leave to file its supplemental motion out of time will be sustained.

On December 15, 1998, Grand Court provided plaintiff a copy of the proposed supplemental motion and accompanying brief. Plaintiff has had notice of the supplemental motion for nearly 60 days, and he is in a position to promptly respond. Accordingly, the Court directs the Clerk of the Court to docket defendant's supplemental motion and suggestions, and orders that plaintiff, on or before **February 24, 1999** file any response. In view of the upcoming trial setting, defendant's reply brief shall be due on or before **March 1, 1999.**

## II. Claims Under The FMLA

When an employee has a serious health condition which renders him unable to perform his job functions, he is entitled to 12 weeks of unpaid leave under the Family Medical Leave Act ("FMLA"). *See* 29 U.S.C. § 2612(a)(1)(d). The employer may require, however, that the employee take paid leave in lieu of unpaid leave. *See* 29

U.S.C. § 2612(d)(2)(B).[5] At the end of 12 weeks, if the employee is "unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration" to his or her previous position or another position under the FMLA. *Parker v. Sony Pictures Entertainment, Inc.,* 19 F.Supp.2d 141, 153 (S.D.N.Y.1998) (citations omitted).

The FMLA prohibits interfering with, or denying the exercise or attempted exercise of, rights under the Act; discharging or otherwise discriminating against an individual for attempting to exercise those rights; and discharging or otherwise discriminating against an individual for filing a charge of violation of the FMLA or participating or testifying in a proceeding concerning FMLA rights. *See* 29 U.S.C. § 2615,[6] *see also* Mark W. Bennett, *Employment Relationships: Law and Practice* § 4.05[C], pp. 4–99 –100 (Aspen Law & Business, 1998).

An employer who violates Section 2615 is liable to the affected eligible employee for "unpaid wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." [7] 29 U.S.C. § 2617(a)(1)(A)(i)(I). Where the employee has not lost or been denied any wages, salary, employment benefits or other compensation, the employer is liable for "any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks of wages or salary for the employee." 29 U.S.C. § 2617(a)(1)(A)(i)(II). In addition, the employer is liable for interest and liquidated damages, *see* 29 U.S.C. § 2617(a)(1)(A)(ii)–(iii), and the employee may obtain "such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B).

In the pretrial order, plaintiff claims that he is entitled to 12 weeks of unpaid leave "beginning at the point when he specifically verbally requested unpaid leave." *Joint [Proposed] Pretrial Order* (Doc. # 35) filed December 7, 1998 at 6 (¶ 3). The pretrial order further claims that. this request occurred on September 20, 1996, when plaintiff "picked up his paycheck from defendant and informed defendant that his injuries were not healed and that he required more treatment and

---

**5.** Section 2612(d)(2)(B) provides that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee ... for any part of the 12–week period of such leave under [this Act]." If the employer elects to give the employee paid leave in lieu of unpaid leave, the employee is not entitled to an additional period of unpaid leave after the 12 week period of paid leave has been exhausted. *See Parker v. Sony Pictures Entertainment, Inc.,* 19 F.Supp.2d 141, 153 (S.D.N.Y.1998).

**6.** 29 U.S.C. § 2615 provides as follows:
(a) Interference with rights
(1) Exercise of rights
It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
(2) Discrimination
It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.
(b) Interference with proceedings or inquiries
It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual—
(1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter; or
(2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or
(3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

**7.** An "eligible employee" is one who has been employed for at least 12 months and has worked at least 1,250 hours during that period. 29 U.S.C. § 2611(2)(A).

recovery time in the form of additional unpaid leave." *Id.* at 4.

■ As previously noted, the record contains no evidence that on September 20, 1996, or at any other time, plaintiff requested unpaid FMLA leave by name; the uncontroverted fact is that he made no such request. The law is clear, however, that plaintiff was not required to mention the FMLA by name to specifically preserve his rights. Under 29 C.F.R. § 825.208(a)(2),

> As noted in § 825.302(c), an employee giving notice of the need for unpaid FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice, though the employee would need to state a qualifying reason for the needed leave. An employee requesting or notifying the employer of an intent to use accrued paid leave, even if for a purpose covered by FMLA, would not need to assert such right either.

As noted, plaintiff claims that he invoked his rights under the FMLA on September 20, 1996, when he "informed defendant that his injuries were not healed and that he required more treatment and recovery time in the form of additional unpaid leave." The problem with this argument is that it finds no factual support in the record. According to the undisputed facts, plaintiff went to Grand Court to pick up a check on September 20, 1996. During the half hour he was there, plaintiff spoke with various residents and employees, including Rolleg and perhaps Jim Daniels, his supervisor. The record contains no evidence that plaintiff discussed his sickness, absence or expected return date with Rolleg, Daniels or any other Grand Court employees. In fact, plaintiff's deposition testimony is as follows:

Q. ... On the 20th of September you went to Grand Court late in the afternoon?

A. Yes. I did. \*\*\*

Q. And at that time you picked up your paycheck?

A. It would be—I would say benefit check. It was for sick days. \*\*\*

Q. And did you talk with anyone at Grand Court?

A. Yes. \*\*\* Probably about 50 residents and at least eight or 10 fellow employees.

Q. How long were you there?

A. At least half an hour.

Q. Is it fair to say that when you talked with the residents it was kind of everyday chitchat?

A. No. They came up to me and asked how was I doing, how was I feeling, you know, was I feeling any better and we will miss you and those kinds of things.

Q. Do you recall anything other than that kind of discussion?

A. Not offhand I don't recall, no. \*\*\*

Q. Do you recall which eight employees you talked to?

A. No. Definitely Joan Rolleg. \*\*\* Possibly Jim Daniels. I know he would have been there, but he was usually in and out and running around so much you could hardly find him, but I might have crossed his path along the way and said, "Hi, how are you doing?"

Q. Anything more than that?

A. Nothing more that I can recall.

*Deposition of George W. Neide* (November 20, 1998) at 46–48 [Exhibit 5 to *Defendant Grand Court Lifestyles, Inc.'s Exhibits In Support Of Its Motion For Summary Judgment* (Doc. # 39) filed December 14, 1998].

In summary, the record contains no evidence which supports plaintiff's claim that or September 20, 1996, he "informed defendant that his injuries were not healed and that he required more treatment and recovery time in the form of additional unpaid leave." The notice which an em-

ployee must give an employer, in order to trigger FMLA protection, depends on whether the requested leave is foreseeable, as outlined in 29 C.F.R. § 825.302, or unforeseeable, as outlined in 29 C.F.R. § 825.303. Where the need for FMLA leave is foreseeable,

(a) An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on ... planned medical treatment for a serious health condition of the employee.... If 30 days notice is not practicable, such as because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable.... Whether the leave is to be continuous or is to be taken intermittently or on a reduced schedule basis, notice need only be given one time, but the employee shall advise the employer as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown.

(b) "As soon as practicable" means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case. For foreseeable leave where it is not possible to give as much as 30 days notice, "as soon as practicable" ordinarily would mean at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee.

(c) An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA.... The employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken. In the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave (see § 825.305).

(d) An employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. However, failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice.

(e) When planning medical treatment, the employee must consult with the employer and make a reasonable effort to schedule the leave so as not to disrupt unduly the employer's operations, subject to the approval of the health care provider. Employees are ordinarily expected to consult with their employers prior to the scheduling of treatment in order to work out a treatment schedule which best suits the needs of both the employer and the employee.

29 C.F.R. § 825.302. Where the need for FMLA leave is not foreseeable, however, the employee's duty is prescribed by 29 C.F.R. § 825.303, as follows:

(a) When the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. In the case of a

medical emergency requiring leave because of an employee's own serious health condition . . ., written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.

(b) The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means. Notice may be given by the employee's spokesperson (e.g., spouse, adult family member or other responsible party) if the employee is unable to do so personally. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

The Court need not decide whether plaintiff's need for FMLA leave was foreseeable or unforeseeable, because on September 20, 1996, plaintiff did not give Grand Court notice of any need for FMLA protection which was sufficient under 29 C.F.R. § 825.302 or 29 C.F.R. § 825.303. He did not comply with 29 C.F.R. § 825.302 because he failed to provide 30 days notice in advance of any medical treatment which was scheduled to begin on or after September 20, 1996. Also, he has not shown that 30 days notice was impracticable or that he even required medical treatment beginning September 20, 1996 or thereafter. Plaintiff did not provide written or verbal notice which was sufficient to make Grand Court aware that he needed FMLA-qualifying leave on or after September 20, 1996, or explain the anticipated timing and duration of the leave. Plaintiff did not comply with Grand Court's usual and customary notice and procedural requirements for requesting leave, as set forth in the employee handbook. In particular, he did not "submit a written request and a completed 'Certification of Physician or Practitioner' . . . for [any] Family and Medical Leave" request. The record contains no evidence that when planning any required medical treatment, plaintiff consulted with Grand Court and made a reasonable effort to schedule the leave so as not to disrupt unduly his employer's operations. Accordingly, a reasonable jury could not find that on September 20, 1996, plaintiff gave Grand Court notice of his need for FMLA protection which was sufficient under 29 C.F.R. § 825.302.

The same is true if we assume that the approximate timing of plaintiff's need for leave was not foreseeable as of September 20, 1996. Under 29 C.F.R. § 825.208(a)(1), an employee giving notice of the need for unpaid FMLA leave must explain "the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act." Also, under 29 C.F.R. § 285.208(a)(2), an employee using accrued paid vacation leave who (like plaintiff) seeks an extension of unpaid leave for an FMLA-qualifying purpose "will need to state the reason." The record contains no evidence that on September 20, 1996, plaintiff gave written notice of "the reasons for the needed leave" or communicated any other information which would trigger a duty on the part of Grand Court to determine whether plaintiff was entitled to FMLA leave. Accordingly, a reasonable jury could not find that plaintiff gave Grand Court notice of his need for FMLA protection for a serious medical condition that was not foreseeable under 29 C.F.R. § 825.303.

The Court holds as a matter of law that plaintiff's statements to Grand Court on September 20, 1996, did not sufficiently inform Grand Court that plaintiff required additional treatment and recovery time in the form of additional unpaid leave under the FMLA. The only notice which was arguably sufficient for FMLA purposes

was plaintiff's telephone call, at some point during the hospital stay which began on July 26, 1996, which told the Grand Court receptionist that plaintiff had broken his leg in a car accident and was in the hospital. The record contains no evidence that plaintiff requested unpaid leave during this call, however, and plaintiff does not rely on this telephone call as a basis for his FMLA claim.

As noted above, the FMLA prohibits an employer from discharging or otherwise discriminating against plaintiff for attempting to exercise his FMLA rights, discharging or otherwise discriminating against him for filing a charge of violation of the FMLA or participating or testifying in a proceeding concerning FMLA rights. In this case, however, plaintiff makes no such claims.[8] He claims only that Grand Court interfered with his rights under the Act when it discharged him "before the end of his 12 week [sic] unpaid leave." He therefore seeks damages consisting of back pay, liquidated damages, attorneys fees and costs of suit. *See Joint [Proposed] Pretrial Order* at 6.[9]

While plaintiff could be more clear on the point, the Court believes that plaintiff invokes 29 U.S.C. § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1262 (10th Cir.1998) (construing plaintiff's allegation that employer interfered with her exercise of FMLA rights by ending her employment, effectively denying her FMLA leave request, as assertion of cause of action under § 2615(a)(1)). To state a claim under Section 2615(a)(1), plaintiff must establish that he is entitled to the protections of the FMLA and that Grand Court interfered with, restrained or denied the exercise of his rights under the Act. *See Dawson v. Leewood Nursing Home, Inc.*, 14 F.Supp.2d 828, 832 (E.D.Va.1998).

■ In this case, as noted above, the evidence cannot sustain plaintiff's claim that on September 20, 1996, he "informed defendant that his injuries were not healed and that he required more treatment and recovery time in the form of additional unpaid leave." The Court must therefore reject any argument that plaintiff was entitled to 12 weeks of unpaid FMLA leave beginning on September 20, 1996, and that Grand Court discharged him "before the end of his 12 week [sic] unpaid leave." The exact date of plaintiff's termination is not clear, but it evidently occurred sometime between October 16, 1996, when plaintiff called Grand Court and gave the receptionist his telephone number in Pennsylvania, and November 23 or 30, 1996, when Daniels told plaintiff that he had been terminated. On the undisputed facts, however, for reasons stated above, plaintiff was not entitled to FMLA leave during the period between October 16 and November 23 or 30, 1996. Consequently, the Court must conclude as a matter of law that Grand Court did not interfere with, restrain or deny plaintiff the opportunity to exercise his rights by discharging him "before the end of his 12 week [sic] unpaid leave." When Grand Court terminated his employment, plaintiff was not on FMLA leave. After Grand Court terminated his employment, plaintiff did not seek FMLA leave. Even if he had done so, plaintiff

---

**8.** In his opposition to Grand Court's motion for summary judgment, plaintiff attempts to clarify his FMLA claim as follows:

Plaintiff has not brought a case of retaliatory discharge for asserting FMLA rights. His cause of action is for illegal discharge while entitled to protection under the FMLA.... [D]efendant should have designated him as under FMLA status with the rules and statutory rights and requirements that accompany it.

*Memorandum In Opposition To Defendant's Motion For Summary Judgment* (Doc. # 41) filed January 6, 1999, at 13.

**9.** The pretrial order does not place a monetary value on these claims, but plaintiff's claim for back pay presumably does not exceed 12 weeks.

would not have been eligible because—at least by late November 1996—he was ready to return to work and did not need further leave.[10] Plaintiff does not even claim that Grand Court's decision to terminate his employment prevented him from obtaining unpaid FMLA leave by rendering him ineligible for protection under the Act.[11] Therefore Grand Court's decision to terminate plaintiff's employment did not interfere with, restrain or deny plaintiff's right to unpaid FMLA leave, or any other FMLA right which plaintiff has articulated.

As noted, plaintiff's claim is that Grand Court interfered with, restrained or denied plaintiff the opportunity to exercise his FMLA rights by discharging him "before the end of [the] 12 week [sic] unpaid leave" to which he was entitled as of September 20, 1996. The Court disagrees with all four of plaintiff's underlying assumptions: (1) that he requested such leave on September 20, 1996; (2) that he was entitled to 12 weeks of unpaid leave beginning September 20, 1996; (3) that his entitlement to 12 weeks of unpaid leave conferred upon him a so-called "protected status;" and (4) that Grand Court terminated his employment while he enjoyed "protected status." As a result, for these reasons, defendant is entitled to summary judgment on plaintiff's FMLA claims.

Even if plaintiff could establish a genuine issue of material fact whether his termination effectively denied his right to FMLA leave, as a matter of law, termination of employment does not give rise to a claim for denial of leave under § 2615(a)(1). *E.g., Gunnell,* 152 F.3d at 1262 (in light of plaintiff's explicit disavowal of any § 2615(a)(2) claim that she was terminated because she requested FMLA leave, any reason for terminating her employment would not involve FMLA and consequently plaintiff would not be entitled to relief under FMLA).

On this record, a reasonable jury would necessarily conclude that Grand Court did not interfere with, restrain or deny plaintiff the opportunity to exercise his FMLA rights by discharging him "before the end of [the] 12 week [sic] unpaid leave" to which he was entitled as of September 20, 1996. Given this finding, the Court does not address Grand Court's remaining arguments: that plaintiff received his "full pay and benefits" and that he cannot establish actual and measurable damages under 29 U.S.C. § 2617(a)(1)(A); that plaintiff fails to establish a prima facie case under the FMLA because he cannot demonstrate that he has been damaged in some measurable way by Grand Court's conduct; and that plaintiff cannot seek equitable relief under the FMLA, 29 U.S.C. § 2617(a)(1)(B), because he is completely and permanently disabled and therefore is no longer capable of performing his job. In addition, Grand Court's causal connection argument is inapplicable to plaintiff's claim for denial of rights under 29 U.S.C. § 2615(a)(1).[12]

---

10. In the pretrial order, plaintiff admits that the purpose of the telephone call to Daniels in late November was to "schedule a return to work." *Joint [Proposed] Pretrial Order* (Doc. # 35) filed December 4, 1998 at 5. Similarly, in his *Memorandum In Opposition To Defendant's Motion For Summary Judgment* (Doc. # 41) filed January 6, 1999 at 4 (¶ 3), plaintiff refers to his "return to work call on November 30." Plaintiff cites no record evidence which supports either allegation, but the Court construes these allegations as an admission that plaintiff was able to return to work on November 23 or 30, 1996, and that he sought no further accommodation, by way of unpaid leave, under the FMLA.

11. His claim is the opposite: that because he was eligible for FMLA leave (even if he did not want or failed to request it), Grand Court could not fire him.

12. The requirement that plaintiff establish a causal connection is an element of a prima facie case of discriminatory discharge or retaliation under 29 U.S.C. § 2615(a)(2). *See, e.g., Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1325 (10th Cir.1997)); accord *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 161 (1st Cir.1998). A prima facie case under § 2615(a)(2) requires a showing that (1) plaintiff availed himself of a protected right under the FMLA; (2) plaintiff was adversely

The Court parenthetically notes that although plaintiff disclaims any theory of "retaliatory discharge" under the FMLA, he nevertheless asserts that his cause of action under the FMLA "is for illegal discharge while entitled to protection under the FMLA." This claim could be construed as a claim under 29 U.S.C. § 2615(a)(2). Grand Court seeks judgment as a matter of law, at least in part, on the ground that plaintiff cannot establish a causal connection between a request for FMLA leave and an adverse employment decision. Accordingly, the Court briefly analyzes plaintiff's FMLA claim under Section 2615(a)(2).

The *McDonnell Douglas* burden shifting approach applies to FMLA retaliation claims. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208–9 (10th Cir.1997). Under that approach, plaintiff's establishment of a prima facie case creates a presumption of retaliation. The burden then shifts to Grand Court to produce evidence that the adverse employment action was taken for a legitimate nondiscriminatory reason. *Id.* at 208. If Grand Court meets this burden, the burden then shifts back to plaintiff to present evidence that the proffered reason was not the true reason for the employment decision. *Id.*

To establish a prima facie case of discrimination or retaliation under 29 U.S.C. § 2615(a)(2), plaintiff must make a showing that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there exists a causal connection between the two actions. (*See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1325

(10th Cir.1997)); accord *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 161 (1st Cir.1998).

Grand Court challenges whether plaintiff can establish a causal connection between his discharge and any request for medical leave, but proceeds to advance its reasons for discharging plaintiff. Under the burden shifting approach, the Court must disregard the employer's proffered reasons for terminating plaintiff in determining whether plaintiff has made a prima facie case. *See, e.g., Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir.1992); *MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1119–20 (10th Cir.1991)). For reasons previously stated (see note 12, *supra*), the Court disagrees that plaintiff can state a prima facie case. Because Grand Court primarily addresses the legitimate nondiscriminatory reasons for its action, however, the Court directly addresses that claim.

Grand Court argues that it had a legitimate nondiscriminatory reason for terminating plaintiff's employment. Grand Court told plaintiff that he needed to contact his supervisor on a regular basis so that it could determine when he would return to work. Plaintiff did not contact his supervisor between September 20, 1996 and October 16, 1996. Grand Court made several attempts to contact him by phone and by mail. When those attempts failed, Grand Court concluded that plaintiff had abandoned his job. The FMLA authorizes employers to impose reporting requirements for eligibility for leave under the FMLA, *see* 29 U.S.C. § 2614(a)(5); *see also Holmes v. Boeing Co.*, No. 96–1424–

---

affected by an employment decision; and (3) there exists a causal connection between the two actions. *Morgan*, 108 F.3d at 1325. Here, the record does not support plaintiff's claim that he availed himself of any FMLA rights on September 20, 1996, or thereafter. As noted above, the Court is bound to take as undisputed the facts that plaintiff did not request unpaid leave under the FMLA or provide any FMLA related paperwork to Grand Court. Also, the record contains no evidence that Grand Court failed to inform plaintiff of

his FMLA rights. In fact, the employee handbook, which plaintiff received and read, contains a section regarding the FMLA. In pertinent part, it states that the Act provides eligible employees up to 12 weeks of unpaid leave under certain conditions; that Grand Court complies with the Act; and that an eligible employee "*must* submit a written request and a completed 'Certification of Physician or Practitioner' ... for each Family and Medical Leave" request. The handbook also includes a form for requesting FMLA leave.

JTM, 1998 WL 92233, at *2 (D.Kan. Feb. 3, 1998), and Grand Court's employee handbook states that an employee on medical leave who fails to notify his supervisor of his status after two consecutive work day absences will be terminated for voluntary job abandonment. The handbook also requires the employee to keep his supervisor informed as to the status of his condition and the expected date of his return, and states that failure to maintain such contact may result in loss of approved leave status. Finally, Grand Court argues that it is irrelevant whether plaintiff contacted Grand Court on October 16, 1996 and November 5, 1996, because it is undisputed that plaintiff did not talk to his supervisor on those dates. *See, e.g., Holmes,* 1998 WL 92233, at *2.

■ Because Grand Court has met it burden of producing evidence that the adverse employment action was taken for a legitimate nondiscriminatory reason, the presumption of discrimination drops from the case and plaintiff must present evidence that the proffered reason was not the true reason for the employment decision. Plaintiff proffers no arguments and cites no record evidence to establish that the true reason for his discharge was the fact that he availed himself of a protected right under the FMLA. Plaintiff merely argues that Grand Court's arguments are irrelevant because he does not claim retaliatory discharge for asserting FMLA rights. Accordingly, to the extent that plaintiff asserts a claim for discrimination or retaliation under 29 U.S.C. § 2615(a)(2), defendant is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** that defendant's *Motion For Summary Judgment* (Doc. # 37) filed December 14, 1998, be and hereby is **SUSTAINED** on plaintiff's claims under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

**IT IS HEREBY FURTHER ORDERED** that the Clerk of the Court docket defendant's *Supplemental Motion For Summary Judgment* and accompanying *Memorandum In Support Of Its Supplemental Motion for Summary Judgment,* which are attached to defendant's *Motion For Leave To File Its Supplemental Motion For Summary Judgment Out Of Time* (Doc. # 40) filed February 15, 1999.

**IT IS HEREBY FURTHER ORDERED** that plaintiff on or before **February 24, 1999,** file any response to defendant's *Supplemental Motion For Summary Judgment,* and that defendant on or before **March 1, 1999** file any reply brief in support of its motion.