James DELONG & the City & County
of Denver, Petitioners,

v.

Robert TRUJILLO, Respondent.

No. 99SC807.

Supreme Court of Colorado,
En Banc.

June 25, 2001.

J. Wallace Wortham, Jr., City Attorney Richard A. Stubbs, Assistant City Attorney, Denver, CO, Attorneys for Petitioners.

John R. Palermo, Denver, CO, Attorney for Respondent.

Chief Justice MULLARKEY delivered the Opinion of the Court.

In this case we construe for the first time the Family Medical Leave Act, 29 U.S.C. §§ 2601 to 2654 (2000) ("FMLA"). As relevant here, the FMLA provides that an employee may take reasonable leave, up to twelve weeks in a twelve-month period, to care for a parent who has a serious health condition. 29 U.S.C. § 2612(a)(1)(C).

In the case before us, an employee was dismissed from his employment because he took FMLA leave without following the appropriate procedures for taking such leave and for failing to call in his absences on a daily basis. The court of appeals ordered the reinstatement of the employee, concluding that the dismissal violated the provisions of FMLA. *DeLong v. Trujillo*, 1 P.3d 195 (Colo.App.1999).

We determine that, under FMLA's interim regulations applicable to this case, an employee who has actual knowledge of an employer's requirements for taking FMLA leave may be disciplined for failing to comply with these requirements. We also conclude that an employer may assert that an employee is not covered by FMLA if the employee fails to produce medical certification of his or her relative's serious health condition. Finally, we find that an employer's requirement that an employee periodically report his or her absences is not inconsistent with the provisions of the FMLA and therefore an employer does not violate FMLA when it disciplines an employee for failing to follow such a procedure.

I.

The history of this case is as follows. The City and County of Denver ("City") employed the respondent, Robert Trujillo ("Trujillo"), for fifteen years before dismissing him on April 1, 1995. Between December 1993 and March 1995, Trujillo took three leaves of absence. Prior to these absences, the City had issued Trujillo three written reprimands for attendance problems and another written

reprimand for refusing to follow a direct order from an authorized supervisor.

Trujillo took his first leave ("Leave I") from December 12, 1993, through March 5, 1994, to take care of his ailing mother. He took additional time off to care for his mother from November 25, 1994, until January 30, 1995, when his mother died ("Leave II"). Trujillo did not return to work after his mother's death, spending the additional time settling his mother's estate and caring for his father ("Leave III").

At the beginning of Leave I, Trujillo provided the City with a note from his mother's heart specialist explaining that a leave of absence was required so that Trujillo could care for his mother who was seriously ill. Leave I was Trujillo's first leave of absence under the provisions of the FMLA, and provided him with his first exposure to the City's requirements for such leave.

Trujillo did not submit a request for FMLA leave prior to taking Leave II, claiming that he did not submit the proper paperwork because the leave was unforeseeable; Trujillo commenced Leave II when his mother was rushed to the hospital with serious health problems. During Leave II, Trujillo followed the standard City absentee procedure and called his supervisor on a daily basis, informing his supervisor that he would be absent from work that day and stating the reason for the absence. After Trujillo had been absent from work for a month without requesting a leave of absence, the City asked him to submit a request for leave according to the City's FMLA procedures. The City received such a request for leave on February 3, 1995. The physician who was treating Trujillo's mother signed the leave of absence request, and stated that the leave was necessary so that Trujillo could care for his terminally ill mother. The City retroactively approved the leave request.

Trujillo's mother died on January 30, 1995. Following her death, Trujillo had several conversations with Jim Thomas, an administrative director with the City. Trujillo and Thomas had different recollections of the conversations. The hearing officer who reviewed this case when Trujillo appealed his dismissal, credited Thomas's version of the conversations. On January 31, 1995, at his mother's funeral, Trujillo informed Thomas that he was concerned about caring for his father who was having problems adjusting to life without his wife. Thomas explained to Trujillo that this was not an appropriate time to discuss his employment and that he should not worry about his job.

After January 31, Trujillo stopped calling his supervisor on a daily basis and initiated no further contact with the City. On February 10, 1995, Thomas contacted Trujillo and informed him that his FMLA leave to care for his mother had ended when his mother died. Thomas explained to Trujillo that his absences subsequent to January 30 would therefore be treated as unauthorized unless he submitted a new request for FMLA leave. Trujillo was told that until he submitted such a request he would be considered to be on unauthorized "Leave Without Pay" status and that there would be serious consequences if he remained absent from work. Trujillo also was informed that he still was required to call his supervisor every workday to explain his absence or he would be in violation of City procedures. Thomas emphasized that such a violation could jeopardize Trujillo's future employment with the City. Thomas repeated the warnings to Trujillo and asked him if he understood what he had been told; Trujillo answered in the affirmative. After the conversation, Thomas faxed Trujillo the appropriate paperwork to request family medical leave.

Even after these events, Trujillo failed to call in any of his absences or submit a new FMLA request form. On March 14, 1995, a disciplinary meeting was held at which Trujillo and his union representative met with Thomas and Trujillo's direct supervisor. After the meeting, Thomas recommended that Trujillo be terminated because he had: (1) failed to call in his absences to his supervisor even though he had been instructed to do so; (2) previously been reprimanded for abusing the City's sick leave policies; and (3) previously failed to comply with directives from a supervisor.

On March 16, the physician treating Trujillo's father submitted a letter to the City. The

letter stated that Trujillo required a leave of absence after his mother's death so that he could manage his mother's estate and care for his father, whose health had deteriorated after his wife's death. The letter made no mention as to whether Trujillo's father had a serious health condition. On April 1, 1995, the City terminated Trujillo's employment. According to the City, Trujillo was terminated for being absent from work without requesting leave and for failing to comply with a supervisor's directive to follow the City's call-in procedure during his absence. Specifically, the grounds for immediate termination, as provided for in Denver Career Service Rule 16–22, were neglect of duty, failure to comply with a supervisor's orders and department policies, unauthorized absence from work, and abuse of sick leave.

Trujillo appealed his dismissal to the City's Career Service hearing office who overturned Trujillo's dismissal. The hearing officer determined that the City failed to adhere to FMLA regulations in terminating Trujillo, and therefore, his firing was invalid. The Career Service Board upheld the hearing officer's decision.

The City appealed the case to the district court which reversed the hearing officer's decision. Within the meaning of the act, the court concluded that during Leave III the provisions of the FMLA did not protect Trujillo because the record contained no evidence that his father suffered from a "serious health condition." The court further concluded that Trujillo had abandoned his job when he did not return to work after his mother's death because he had not requested additional leave and he failed to communicate with his employer regarding his absence.

A divided panel of the court of appeals reversed the trial court's order. *DeLong*, 1 P.3d at 202. It found that the City had violated the FMLA because it did not: (1)

provide Trujillo with written notice of his rights and obligations under the FMLA; (2) properly request FMLA medical certification from Trujillo; (3) advise Trujillo of the consequences of failing to submit adequate medical certification of his father's condition; (4) give Trujillo an adequate opportunity to cure deficiencies in the medical certification he did eventually provide; and (5) properly advise Trujillo that his FMLA leave would expire on a specific date. *Id.* at 200–02.

We granted certiorari to determine whether the City violated the provisions of the FMLA when it terminated Trujillo's employment.[1] We conclude that: (1) under the interim regulations Trujillo received adequate notice of the requirements for taking FMLA leave; (2) Trujillo did not establish that he was entitled to the protections of the FMLA; and (3) the City had an independent reason for terminating Trujillo's employment that did not violate the FMLA. We therefore reverse the judgment of the court of appeals and remand this case to that court with directions.

## II.

■ The City brought its appeal in the district court under C.R.C.P. 106(a)(4). The standard of review in a Rule 106(a)(4) proceeding is limited to a determination as to whether the "governmental body or officer ... has exceeded its jurisdiction or abused its discretion." C.R.C.P. 106(a)(4). When determining whether there has been an abuse of discretion, a reviewing court looks to see if the applicable law has been misconstrued or misapplied. *Bd. of County Comm'rs v. Conder*, 927 P.2d 1339, 1343 (Colo.1996).

We find that the court of appeals misconstrued applicable law when it found that the City's termination of Trujillo violated the requirements of the FMLA.

1. We granted certiorari on the following issues:
 (1) Whether the court of appeals erred in determining that the City was required to provide written notice to Trujillo of his rights and obligations under the Family Medical Leave Act of 1993 before discharging Trujillo for absenteeism.
 (2) Whether the court of appeals erred in determining that Trujillo was entitled to the protec-

tions of the Family Medical Leave Act during his period of leave subsequent to January 30, 1996.
 (3) Whether the court of appeals erred in determining that the City was not entitled to terminate Trujillo's employment on the ground that he had failed to comply with the City's daily call-in procedure while on leave.

## A.

The court of appeals determined that the City did not comply with FMLA notice provisions because it did not provide Trujillo with *written* notice of his rights and obligations under FMLA. The court found that due to this failure FMLA provisions prevented the City from dismissing Trujillo for failing to follow the City's FMLA procedures. We disagree. We find that Trujillo was fully informed of his rights and obligations under FMLA and therefore he could be disciplined for failing to follow the City's FMLA procedures.

■ This case is governed by the interim FMLA regulations that were in effect at the time that Trujillo took Leave III. *See Bauer v. Varity Dayton–Walther Corp.*, 118 F.3d 1109, 1112 (6th Cir.1997) (observing that the final FMLA regulations did not become effective until April 6, 1995, and are not applied retroactively). Interim regulation, 29 C.F.R. § 825.301(c)(1993)(now codified as 29 C.F.R. § 825.301(b)(1)(2000)), required an employer to give an employee *notice* of its policies and procedures related to taking FMLA leave. In contrast, the final FMLA regulation, 29 C.F.R. § 825.301(b)(1)(2000), requires an employer to provide an employee with *written* notice of his or her FMLA rights and obligations. The preamble to the final FMLA regulation does not clarify whether the interim regulation also required written notice because it ambiguously states that "[t]his regulation has been *changed* to make it *clear* that the notice must be in writing." [2] The Family Medical Leave Act of 1993, 60 Fed. Reg. 2180 (Jan. 6, 1995) (codified at 29 C.F.R. pt. 825) (emphasis added).

■ In this case, we need not determine whether the interim regulations required written notice because we find that Trujillo had been fairly advised of his rights and obligations under FMLA. Under the interim regulations, "an employer's failure to provide adequate notice of its FMLA policies to employees can constitute interference with FMLA rights when the lack of notice causes an employee to *unknowingly* violate substantive provisions of the employer's FMLA policies and the employer attempts to benefit from such lack of notice by denying an employee the benefits provided by the FMLA." *Fry v. First Fid. Bancorporation*, No. 95–6019, 1996 WL 36910, 1996 U.S. Dist. LEXIS 875, at *19 (E.D.Pa. Jan. 31, 1996)(emphasis added); *see also Mora v. Chem–Tronics, Inc.*, 16 F.Supp.2d 1192, 1220 (S.D.Cal.1998) (observing that it is necessary to look at the circumstances surrounding the notice an employee received regarding the FMLA to determine whether the failure to notify an employee of his or her rights amounts to an interference with their FMLA rights). An employer interferes with an employee's FMLA rights only if the employee forfeited his or her rights because the employer failed to provide adequate notice. *Fry*, 1996 WL 36910, 1996 WL 36910, 1996 U.S. Dist. LEXIS 875, at *16–17; *Mora*, 16 F.Supp.2d at 1220; *Lacoparra v. Pergament Home Ctrs., Inc.*, 982 F.Supp. 213, 220 (S.D.N.Y.1997).

■ We conclude that the City's failure to provide Trujillo with written notice of his FMLA obligations and their consequences did not prevent the City from disciplining Trujillo. We reach this conclusion because Trujillo had extensive experience with the FMLA. First, Trujillo took leave, under the act, three times within two years. Second, Trujillo was informed directly that his FMLA leave to care for his mother terminated at her death and that to obtain a new FMLA leave, he was required to submit new paperwork, including a physician's certification that his father was suffering from a serious health condition. Therefore, Trujillo did not act without knowledge when he failed to meet FMLA obligations. Furthermore, because Trujillo was aware of his responsibilities under FMLA, the lack of written notice was not the cause of Trujillo's forfeiture of his FMLA rights.

---

2. The ambiguity in the preamble is apparent in the court'of appeals' opinion. The majority opinion reads the final regulation as merely clarifying the requirements of the interim regulation. *De-Long v. Trujillo*, 1 P.3d 195, 199 (Colo.App.1999).

However, the dissent finds that the final regulation changed the interim regulation to require written notice. *Id.* at 204 (Casebolt, J., dissenting).

**B.**

Prior to his predisciplinary hearing, Trujillo did not provide the City with medical certification of his father's health condition. Moreover, the certification that Trujillo submitted after his hearing was inadequate because it did not state that his father was suffering from a serious health condition.

■■■■ To maintain an action under FMLA, Trujillo was required to show that: (1) he was an eligible employee as defined in 29 U.S.C. § 2611(2); (2) the City was an employer as defined in 29 U.S.C. § 2611(4); (3) his father had a serious medical condition as defined in 29 C.F.R. § 825.114; and (4) the City engaged in a prohibited act as defined in 29 U.S.C. § 2615. *See Spurlock v. NYNEX,* 949 F.Supp. 1022, 1033 (W.D.N.Y. 1996); *see also Mora,* 16 F.Supp.2d at 1204 (finding that in order for an employee to be entitled to protections of FMLA there must be a finding that his son had a serious health condition). The employee has the burden of establishing the existence of a serious health condition under FMLA. *See Diaz v. Fort Wayne Foundry Corp.,* 131 F.3d 711, 713 (7th Cir.1997); *Olsen v. Ohio Edison Co.,* 979 F.Supp. 1159, 1164–65 (N.D.Ohio 1997). Although the regulations require that an employer provide an employee with a reasonable opportunity to cure a deficient certification, an employer is not prevented from litigating whether a serious medical condition actually existed if the initial certification did not sufficiently establish the existence of such a condition. *Marchisheck v. San Mateo County,* 199 F.3d 1068, 1077 (9th Cir.1999); *see also Sims v. Alameda Contra Costa Transit Dist.,* 2 F.Supp.2d 1253, 1263 (N.D.Cal.1998).

■■■ As discussed in Part II A, *supra,* Trujillo received adequate notice of his obligations under the FMLA. Furthermore, he was informed that he was required to submit medical certification of his father's condition and he was faxed a FMLA request form. *See Marchisheck,* 199 F.3d at 1077 (observing that failure to provide employee with written notice of FMLA obligations does not estop employer from claiming that serious health condition did not exist when employer asked for certification and mailed appropriate form). The court of appeals, therefore, erred when it dismissed the City's claim that Trujillo was not protected by the FMLA.

However, we need not remand this case for a determination as to whether Trujillo's father actually suffered from a serious health condition because we find that the City had an independent reason for dismissing Trujillo that did not violate the FMLA and was consistent with the City's employment procedures.

**C.**

The court of appeals reversed the district court's order upholding the City's termination of Trujillo's employment because it found that the termination violated FMLA. We find, however, that Trujillo's failure to follow the City's call-in procedure gave the City a reason for terminating Trujillo that was independent of his failure to follow the City's FMLA procedures.

The section of the FMLA requiring an employer to reinstate an employee in the same or an equivalent position after his or her FMLA leave provides that "[n]othing in this subsection shall be construed to prohibit an employer from requiring an employee on leave ... to report periodically to the employer on the status and intention of the employee to return to work." 29 U.S.C. § 2614(a)(5) (2000). The act also states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title." 29 U.S.C. § 2615(a)(1) (2000).

■■■■ In reading the two provisions of the act, we attempt to give them sensible and harmonious effect. *A.P.E. v. People,* 20 P.3d 1179, 1183 (Colo.2001). In addition, we seek to avoid an interpretation that leads to an absurd result. *State v. Nieto,* 993 P.2d 493, 501 (2000). We therefore determine that because FMLA expressly allows an employer to impose a reporting requirement on an absentee employee, the employer, without violating FMLA, may discipline the employee for failing to fulfill these requirements. *See Neide v. Grand Court Lifestyles, Inc.,* 38 F.Supp.2d 938, 951–52 (D.Kan.1999)(finding

that failure by employee to follow employer's call-in procedures gave the employer a legitimate nondiscriminatory reason for taking an adverse employment action against an employee who was on FMLA leave); *Holmes v. The Boeing Co.*, No. 96–1424 JTM, 1998 WL 92233, 1998 U.S. Dist. LEXIS 2504, at *7 (D.Kan. Feb.3, 1998)(stating that it would be absurd to hold that FMLA prohibits an employer from disciplining an employee for failing to follow a procedure that is expressly authorized in the act). An employee on FMLA leave must follow the same standard reporting procedures as an employee on leave for any other reason. *See Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir.1998)("Under FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work.")

 In this case, Trujillo was well aware of the City's reporting procedures since he followed them during Leave II. The hearing officer found as a factual matter that Trujillo had received adequate notice that he was required to call in his absences on a daily basis. She dismissed Trujillo's claim that Thomas had excused him from this requirement when he informed Trujillo not to worry about his job, stating that this "stretched the bounds of any reasonable interpretation of [Thomas's] statements." Furthermore, a supervisor expressly informed Trujillo, during Leave III, that he was required to follow the call-in procedures. Because the reporting procedure was the standard City requirement for all leaves of absence, we conclude that the City did not violate FMLA when it terminated Trujillo for failing to follow its usual call-in procedures.

### III.

We conclude that the City's termination of Trujillo's employment did not violate the provisions of FMLA. Therefore, we reverse the court of appeals' judgment and remand this case with directions to return it to the district court for proceedings consistent with this opinion.