Leslyn CARLSON, Plaintiff–Appellee and Cross–Appellant,

v.

Kimberly Sue FERRIS and Man–Made Pizza, Inc., d/b/a Domino's Pizza, Defendants–Appellants and Cross–Appellees.

No. 00CA2347.

Colorado Court of Appeals, Div. III.

March 28, 2002.

Rehearing Denied May 16, 2002. [1]

Certiorari Granted Dec. 2, 2002.

1. Dailey, J., would grant.

Gradisar, Trechter, Ripperger, Roth & Croshal, James M. Croshal, Pueblo, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Clanahan, Tanner, Downing & Knowlton, P.C., Richard L. Shearer, Dino A. Ross, Denver, Colorado; Paul S. Edwards & Associates, Fotios M. Burtzos, Colorado Springs, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge ROY.

Defendants, Kimberly Sue Ferris (employee) and Man–Made Pizza, Inc. (employer), appeal from the judgment entered on a jury verdict in favor of plaintiff, Leslyn Carlson

(driver), finding employer and employee liable for negligence and awarding damages for injuries sustained in a motor vehicle accident. Driver cross-appeals the judgment concerning comparative negligence. We reverse and remand for a new trial.

Driver and employee were involved in an automobile accident when employee failed to yield the right of way at a stop sign. In driver's vehicle, the lap safety belt was separate from the shoulder belt so that one could be used without the other. Driver stipulated that she was wearing the shoulder belt but was not wearing the lap belt at the time of the accident. Employer stipulated that employee was acting within the course and scope of her employment at the time of the accident.

### I.

Defendants contend that the trial court erred by refusing (1) to issue a seat belt defense jury instruction and (2) to allow them to refer to driver's failure to wear a seat belt as a statutory violation during voir dire, opening statements, and witness examination. We agree with both contentions.

In Colorado, drivers of motor vehicles are required to use the installed safety belt systems, subject to certain exceptions not relevant here. Thus, § 42–4–237(2), C.R.S.2001, provides that "every driver of . . . a motor vehicle equipped with a safety belt system shall wear a fastened safety belt while the motor vehicle is being operated on a street or highway in this state."

Section 42–4–237(1)(b), C.R.S.2001, provides that " 'Safety belt system' means a system utilizing a lap belt, a shoulder belt, or any other belt or combination of belts installed in a motor vehicle to restrain drivers and passengers, which system conforms to federal motor vehicle safety standards."

Failure to comply with the statute subjects the driver to prosecution for a class B traffic infraction, § 42–4–237(4), C.R.S.2001, and evidence of that failure shall be admitted in any litigation to mitigate the driver's damages for pain and suffering arising from an accident. Section 42–4–237(7), C.R.S.2001.

Driver contends that because the General Assembly omitted the word "system" in that portion of § 42–4–237(2) requiring use ("driver . . . shall wear a fastened safety belt"), the statute is satisfied if a driver uses only one of the safety belts installed in the vehicle. In support of her position, driver argues that the use of the disjunctive "or" in § 42–4–237(1)(b) indicates that use of either a lap belt or a shoulder belt or any combination of belts is sufficient under § 42–4–237(2). We disagree.

When interpreting a statute, we look first to its plain language. *See Regional Transportation District v. Outdoor Systems, Inc.*, 34 P.3d 408 (Colo.2001). In order to effectuate legislative intent, we must give words their plain and ordinary meaning and look at the context in which statutory terms appear. The meaning of words may be ascertained by reference to the meaning of words associated with them. *Colorado Interstate Gas Co. v. Property Tax Administrator*, 28 P.3d 958 (Colo.App.2000).

Unless the legislative intent is clearly to the contrary, the use of the disjunctive "or" distinctly marks different categories. *See Bloomer v. Board of County Commissioners*, 799 P.2d 942 (Colo.1990), *overruled in part on other grounds by Bertrand v. Board of County Commissioners*, 872 P.2d 223 (Colo.1994); *Jones v. Westernaires, Inc.*, 876 P.2d 50 (Colo.App.1993).

The General Assembly's goal in enacting the Mandatory Seat Belt Act was to promote and increase safety belt use. *See Anderson v. Watson*, 953 P.2d 1284 (Colo. 1998). We cannot interpret § 42–4–237(2) to reach a result clearly in conflict with legislative intent and disharmonious with § 42–4–237(7) by permitting drivers to avoid using an available safety belt. *See DeLong v. Trujillo*, 25 P.3d 1194 (Colo.2001)(in reading two provisions of a single act, the court attempts to give them sensible and harmonious effect and avoid interpretation that leads to absurd result). When interpreting the list in § 42–4–237(1)(b) in context with the words "installed in a motor vehicle to restrain drivers and passengers," it is clear that the statute there describes different categories of safety belt

systems that may be available in any given automobile, but does not describe various usage options that may satisfy the requirement that one wear a fastened safety belt.

Thus, a system installed in any particular motor vehicle may include either a lap belt or a shoulder belt, or some combination of the two, or any other belt. Where, as here, the system includes a separately fastened lap belt and shoulder belt, the driver is required to fasten both belts to comply with § 42–4–237(2) in order to defeat the safety belt defense to claims for pain and suffering under § 42–4–237(7).

We therefore hold that § 42–4–237(2) requires drivers to fasten all safety belts included in a vehicle's safety belt system in order to defeat a claim of failure to mitigate under § 42–4–237(7).

Having so held, we also conclude that the trial court erred in limiting the scope of defendants' voir dire, opening statement, and witness examination so as to preclude reference to driver's obligation to mitigate her damages and in failing to instruct the jury on driver's failure to mitigate her damages, all pursuant to § 42–4–237(7).

## II.

Because it may arise on retrial, we address defendants' contention that the trial court improperly precluded the testimony of their expert witnesses for failure to comply with the disclosure requirements of C.R.C.P. 26(a)(2)(B)(I). We find no error.

The trial court precluded the testimony of a physician on the basis that he failed to comply with the disclosure requirements of C.R.C.P. 26(a)(2)(B)(I). The trial court also precluded the testimony of a neurologist and vocational expert who were untimely endorsed, in part for their failure adequately to disclose information required in the defense expert's reports pursuant to the same rule.

Discovery obligations and the expert disclosure requirements of C.R.C.P. 26(a) are enforced by the sanction mechanisms of C.R.C.P. 37. *See Todd v. Bear Valley Village Apartments,* 980 P.2d 973 (Colo.1999); *Leidholt v. District Court,* 619 P.2d 768 (Colo.1980)(C.R.C.P. 26 and 37 must be construed together). C.R.C.P. 37(c) provides for the preclusion of nondisclosed evidence unless the nondisclosing party establishes that its failure to disclose was either substantially justified or harmless. *See Todd v. Bear Valley Village Apartments, supra.*

C.R.C.P. 26(a)(2)(B)(I) requires that witnesses retained to provide expert testimony provide a disclosure report containing, among other things, "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Failure to comply with this rule warrants precluding the expert's testimony. *See* C.R.C.P. 37(c)(1).

In 1995, the supreme court implemented extensive revisions to the civil procedure rules to create a comprehensive case management system designed to increase the trial court's managerial role in the discovery process and to reduce discovery abuses. *See Todd v. Bear Valley Village Apartments, supra.* As part of that revision, C.R.C.P. 26 is patterned largely after Rule 26 of the Federal Rules of Civil Procedure. *See* C.R.C.P. 26 committee cmt. (Colorado Differences). We therefore find case law interpreting the federal rule instructive.

■ The identification of cases in which an expert has previously expressed opinions should include, at a minimum, the name of the court or administrative agency where the testimony occurred, the names of the parties, the case number, and whether the testimony was by deposition or at trial. *See Coleman v. Dydula,* 190 F.R.D. 316 (W.D.N.Y.1999); *Nguyen v. IBP, Inc.,* 162 F.R.D. 675 (D.Kan. 1995).

■ It is undisputed that the doctor failed to meet these minimums either in his initial disclosures or during the twenty-day extension to cure the defect. Defendants argue that the doctor's noncompliance was substantially justified because he did not have, and therefore could not provide, the information, and because he had always provided the information in this manner in the past. However, the failure of the witness to comply with the rule in the past does not justify noncompliance in this case. *See Coleman v.*

*Dydula, supra; Palmer v. Rhodes Machinery*, 187 F.R.D. 653 (N.D.Okla.1999).

The doctor had a list of the attorneys' names, as well as sufficient other information so that, with some diligent effort, he could have substantially complied with the requirements of C.R.C.P. 26. Furthermore, the trial court afforded him an opportunity to do so by granting an additional twenty days to update the list. The doctor took no steps to do so.

■ Nor was the doctor's failure to comply harmless. Failure to comply with the mandate of C.R.C.P. 26 is harmless when there is no prejudice to the party entitled to disclosure. *See Reed v. Binder*, 165 F.R.D. 424 (D.N.J.1996). The purposes of providing lists of prior cases are to enable opposing counsel to obtain prior testimony of the expert that may be relevant to the proposed testimony in the pending case and to enable a party to prepare for cross-examination at a deposition or a trial. Failure to disclose the information is not harmless as contemplated by the rules. *See Coleman v. Dydula, supra; Palmer v. Rhodes Machinery, supra; Nguyen v. IBP, Inc., supra.*

■ Defendants' argument that the information could have been obtained by taking a deposition is without merit. One purpose of C.R.C.P. 26 is to avoid having to take depositions in the interest of judicial economy and cost reduction. *See* 4 Sheila K. Hyatt & Stephen A. Hess, *Colorado Civil Rules Annotated* § 26.8 (3d ed.1998). The burden was on defendants' experts to furnish the required information; it was not shifted to driver to discover it by deposition. *See Coleman v. Dydula, supra* (Rule 26 does not contemplate shifting burden of obtaining information to discovering party).

The trial court did not abuse its discretion in precluding the doctor's testimony or in considering the inadequate disclosure when precluding the testimony of the neurologist and the vocational expert. Because the issue is not likely to recur on remand, we do not address defendants' assertion that the trial court abused its discretion in precluding the testimony of neurologist and vocational expert because they were not endorsed in a timely manner.

## III.

■ On cross-appeal, driver contends that the trial court erred in permitting defendants to argue that her failure to use both safety belts could be considered in determining whether she was comparatively negligent. We agree.

■ The failure to mitigate damages and comparative negligence are two separate and distinct concepts. The failure to use the complete safety belt system is not a proper consideration in determining the degree of driver's comparative negligence, if any. *See Churning v. Staples*, 628 P.2d 180 (Colo.App.1981)(citing *Fischer v. Moore*, 183 Colo. 392, 517 P.2d 458 (1973)).

On retrial, the court should permit defendants to pursue their defense of failure to mitigate damages and appropriately instruct the jury with respect thereto. It should also instruct the jury that it may not consider driver's failure to use the complete safety belt system in determining whether she was comparatively negligent in causing or failing to avoid the accident.

## IV.

Driver also argues on cross-appeal that the trial court erred in failing to instruct the jury on sudden emergency. We agree.

■ The sudden emergency instruction is an evidentiary guideline under which the jury applies the prudent person rule in evaluating the evidence of negligence. The instruction may be properly given where competent evidence is presented that a party was confronted with a sudden or unexpected emergency not of that party's own making. *See Gordon v. Benson*, 925 P.2d 775 (Colo.1996)(trial court must instruct jury on applicable law and a party's theory of the case if supported by competent evidence); *Young v. Clark*, 814 P.2d 364 (Colo.1991). It is not appropriate when the party asserting it was obviously negligent. *See Young v. Clark, supra.*

Under the approved pattern instruction on sudden emergency, the jury's application of the doctrine is explicitly conditioned on a finding that the actor, here driver, was not placed in a sudden emergency through any fault of his or her own. *See* CJI–Civ. 4th 9:10 (1998); *see also Young v. Clark, supra.*

In some cases it may not be clear whether a sudden emergency was caused by the negligence of the party claiming the sudden emergency. Here, there was a factual dispute as to whether driver was placed in a sudden emergency through any fault of her own, and that issue should have been submitted to the jury. *See Young v. Clark, supra.*

In this case, both driver and an accident reconstruction expert testified that driver was unable to avoid the accident because she suddenly encountered employee's vehicle obstructing the intersection. During the trial, an investigating officer and driver testified about whether driver swerved or braked. Defense counsel argued in closing that driver had a duty to try to avoid the accident and that she breached that duty.

On that record, the jury was entitled to determine whether driver contributed to creating the emergency or merely reacted to it. Without a sudden emergency instruction the jurors improperly may have charged driver with negligence in reacting to the emergency because they were not instructed to consider whether driver's conduct was prudent *under the emergency circumstances. See* CJI–Civ. 4th 9:10; *Young v. Clark, supra; Davis v. Cline,* 177 Colo. 204, 493 P.2d 362 (1972). Therefore, because the pattern instruction requires the jury to find that driver was not at fault before it applies the doctrine, it was error not to instruct the jury on sudden emergency.

The judgment is reversed, and the case is remanded for a new trial in accordance with the views expressed in this opinion.

Judge NEY concurs.

Judge DAILEY concurs in part and dissents in part.

Judge DAILEY concurring in part and dissenting in part.

I concur in parts II through IV of the majority opinion. However, I respectfully dissent from the majority's determination in part I that a person violates the state seat belt law by using only one of multiple safety belts in a car's "safety belt system."

The issue arises in the context of determining the admissibility in a civil case of evidence of a person's failure to comply with § 42–2–237(2), C.R.S.2001, to mitigate damages resulting from a motor vehicle accident. See § 42–4–237(7), C.R.S.2001. Subject to certain exceptions not relevant here, § 42–4–237(2), provides that "every driver of and every front seat passenger in a motor vehicle equipped with *a safety belt system* shall wear *a fastened safety belt* while the motor vehicle is being operated on a street or highway in this state" (emphasis added).

The text of § 42–4–237(2) itself differentiates between "a safety belt system" and "a fastened safety belt" and requires only that a driver or front seat passenger wear "a fastened safety belt" while the vehicle is in motion.

"Courts should not presume that the legislature used language idly and with no intent that meaning should be given to its language." *People v. J.J.H.,* 17 P.3d 159, 162 (Colo.2001)(internal quotation marks omitted). Had the General Assembly intended the result envisioned by the majority, it could have easily worded the requirement in terms of using all belts in the "safety belt system" instead of using "*a* fastened safety belt." *See Mason v. People,* 932 P.2d 1377, 1380 (Colo.1997)(interpreting speedy trial statute).

In my view, the majority's conclusion is contrary to the clear and unambiguous language of § 42–4–237(2), and, consequently, I would affirm the judgment of the trial court on that issue.