**Lance ERSKINE and Theresa Erskine, Plaintiffs–Appellants and Cross–Appellees,**

**v.**

**Gloria BEIM, M.D., and Alpine Orthopaedics & Sports Medicine, P.C., Defendants–Appellees and Cross–Appellants.**

**No. 07CA0429.**

Colorado Court of Appeals, Div. VI.

Sept. 18, 2008.

As Modified on Rehearing Oct. 16, 2008.

The Law Firm of Saul R. Sarney, P.C., Saul R. Sarney, Denver, Colorado; Leventhal, Brown & Puga, P.C., Jim Leventhal, Benjamin Sachs, Denver, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Cooper & Clough, P.C., Paul D. Cooper, Deanne C. Potestio, Denver, Colorado; Jaudon & Avery, L.L.P., David H. Yun, Denver, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge WEBB.

In this medical malpractice case, plaintiffs, Lance and Theresa Erskine, appeal the judgment entered on a jury verdict in favor of defendants, Gloria Beim, M.D., and Alpine Orthopaedics & Sports Medicine, P.C., on the basis that the trial court improperly struck one of their expert witnesses for failure fully to disclose testimonial history. Defendants conditionally cross-appeal, in the event we reverse, on the basis that the trial court improperly struck three of their expert witnesses, two for failure fully to disclose testimonial history and one for other reasons. We reverse and remand for a new trial at which all experts stricken for failure to disclose testimonial history shall be allowed to testify, but subject to other sanctions that the court may impose, if any.

## I. Background

During trial, plaintiffs moved to preclude testimony from two defense experts for incomplete disclosure of testimonial history, relying on several court of appeals decisions, including *Trattler v. Citron,* 2006 WL 2506741 (Colo.App. No. 04CA2113, Aug. 31, 2006)(not published pursuant to C.A.R. 35(f) )(*Trattler I* ). Defendants then moved to preclude testimony of one of plaintiffs' experts for the same reason. The trial court struck all three of these experts, citing *Svendsen v. Robinson,* 94 P.3d 1204 (Colo. App.2004), *overruled by Trattler v. Citron,* 182 P.3d 674 (Colo.2008)(*Trattler II* ).

During the pendency of this appeal, the supreme court announced *Trattler II,* which held that "preclusion of expert witnesses for failure to provide testimonial history is a disproportionate sanction." 182 P.3d at 683. The parties were ordered to file supplemental briefs addressing *Trattler II.* Plaintiffs argue that *Trattler II* applies retroactively, is directly on point, and requires reversal. Defendants argue that *Trattler II* should not apply retroactively, that the doctrine of invited error prevents plaintiffs from relying on *Trattler II,* and that even under *Trattler II* the trial court acted within its discretion in striking plaintiffs' expert.

We agree with plaintiffs that *Trattler II* should be applied retroactively, that they are not precluded from relying on it by their position below, and that it requires the judgment be reversed and the case remanded for a new trial at which all experts stricken for failure fully to disclose their testimonial histories shall be allowed to testify.

## II. Retroactivity

We first address and reject defendants' contention that we should depart from the general rule that judicial decisions are applied retroactively. *Martin Marietta Corp. v. Lorenz,* 823 P.2d 100, 113 (Colo.1992).

■ To determine whether *Trattler II* should be given only prospective effect, we apply a three-part test: first, the decision must establish a new principle of law; second, the merits of each case must be weighed by looking to whether retrospective application will further or retard the purpose and effect of the rule in question; and third, the inequity imposed by retroactive application must be weighed to avoid injustice or hardship. *See Marinez v. Indus. Comm'n,* 746 P.2d 552, 556 (Colo.1987) (citing *Chevron Oil Co. v. Huson,* 404 U.S. 97, 107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971)). We need address the second and third factors only if we can say with fair assurance that *Trattler II* established a new rule of law. *See Martin Marietta Corp.,* 823 P.2d at 113.

### A. New Rule of Law

■ To establish a new rule of law, a judicial decision must either resolve an issue of first impression not clearly foreshadowed by prior precedent or overrule clear past precedent on which the litigants may have relied. *Id.*

Here, the following statements in *Trattler II* suggest that it did not establish a new rule of law:

· The *Trattler II* majority stated that the trial court had "misread C.R.C.P. 37(c)(1)." 182 P.3d at 683. It did not find that C.R.C.P. 37(c)(1) was ambiguous. Rather, it interpreted Rule 37 by looking to the plain language. *See Curlin v. Regional Transp. Dist.,* 983 P.2d 178, 180 (Colo.App.1999) ("the supreme court's decision ... merely determined" what "the plain language of [the statute]" required); *Jaimes v. State Farm Mut. Auto. Ins. Co.,* 53 P.3d 743, 747 (Colo. App.2002)("In a case of first impression before it, the supreme court in *DeHerrera [v. Sentry Ins. Co.,* 30 P.3d 167 (Colo. 2001) ] interpreted § 10–4–609(1), an unambiguous statute ... The court did not overrule any of its prior precedent, nor did it resolve an issue of first impression not clearly foreshadowed by prior precedent....").

● The *Trattler II* majority did not overrule its prior cases interpreting Rule 37(c)(1), *Cook v. Fernandez–Rocha,* 168 P.3d 505 (Colo.2007), and *Todd v. Bear Valley Vill. Apartments,* 980 P.2d 973 (Colo. 1999), but rather distinguished them because "the evidence that was precluded was the evidence that was not disclosed."

182 P.3d at 681. *See Curlin,* 983 P.2d at 180 ("the court noted that its decision was consistent with the result reached in two prior decisions by different divisions of this court.").

- The *Trattler II* majority also stated, "We *reaffirm* the principle that sanctions should be directly commensurate with the prejudice caused to the opposing party." 182 P.3d at 682 (emphasis added). *See Rocky Mountain Power Co. v. Colorado River Water Conservation District,* 646 P.2d 383, 389 (Colo.1982) (a new rule of law is not created if a decision reaffirms the holdings of prior decisions).

In contrast to these statements, when discussing the court of appeals decisions in *Woznicki v. Musick,* 119 P.3d 567, 575 (Colo. App.2005); *Svendsen,* 94 P.3d at 1208; and *Carlson v. Ferris,* 58 P.3d 1055, 1059 (Colo. App.2002), *aff'd on other grounds,* 85 P.3d 504 (Colo.2003), the *Trattler II* majority observed, "It is unclear from the sparse detail concerning the nature and extent of undisclosed information ... whether these decisions can be reconciled with our opinion today. To the extent, if any, that they are inconsistent with our opinion, *they are overruled.*" *Trattler II,* 182 P.3d at 681 n. 2 (emphasis added).

These court of appeals decisions were final. *Compare Williams v. Trailmobile, Inc.,* 745 P.2d 267, 269 (Colo.App.1987)(new rule created when supreme court overruled two court of appeals decisions in which "the applicable rule had been as stated."), *with Marinez,* 746 P.2d at 558 n. 6 ("The court of appeals judgments that were reversed ... were not final in that they were under review by certiorari. Therefore, the reversal of those judgments did not constitute the overruling of prior precedent.").

Thus, because the first factor is not free of doubt, we consider the second and third factors. *See Martin Marietta Corp. v. Lorenz,* 823 P.2d at 113 ("we cannot conclude with fair assurance that the first element ... for retroactive application has been satisfied, and for that reason we continue with the ... analysis.").

### B. Further or Retard Operation

■ We conclude that retroactive application of *Trattler II* furthers its operation.

The *Trattler II* majority emphasized that "it is unreasonable to deny a party an opportunity to present relevant evidence based on a draconian application of pretrial rules." 182 P.3d at 682. Rather, "the trial court must strive to afford all parties their day in court and an opportunity to present all relevant evidence at trial." *Id.*

These statements show that retroactive application of *Trattler II* would further its purpose by allowing parties who have been precluded from presenting relevant expert testimony, based on incomplete disclosure of the expert's testimonial history, the opportunity to present such testimony at retrial. *Cf. People in Interest of C.A.K.,* 652 P.2d 603, 607 (Colo.1982) (noting that the second factor "argues most strongly for retroactivity" because "the standard of proof directly influences the basic reliability of the factfinding decision," although ultimately concluding prospective application required based on the third factor).

### C. Injustice or Hardship

■ We also conclude that retroactive application of *Trattler II* will not result in injustice or hardship.

In *People in Interest of C.A.K.,* 652 P.2d at 608, the supreme court explained:

[T]here are two justifications for a denial of retroactive effect. The first is the protection of persons who have relied on the earlier state of the law; the second is the protection of stability in areas where society attaches particular importance to stability.

. . .

The reliance factor is more persuasive when the change in the law at issue concerns pre-litigation conduct that becomes the subject of later litigation, because most acts, once done, cannot be undone ... Here, the conduct that is governed by the change in the law can be undone. The case could be remanded for a new trial, and the parties would then begin again at square one.

See also Cash v. Califano, 621 F.2d 626, 629–30 (4th Cir.1980) (nonretroactive cases have involved "unexpected interpretations of procedural law, the retroactive application of which would have clearly prejudiced an unwary litigant by erecting, directly or indirectly, an absolute bar to his claim" or "substantive interpretations of law which would have altered significantly pre-existing patterns of behavior, and concomitant vested rights, which had been premised upon reasonable interpretations of legal precedent."), *cited with approval in Marinez*, 746 P.2d at 559.

Here, applying *Trattler II* retroactively neither bars claims nor undercuts vested rights. Rather, the parties would be allowed to present additional relevant expert testimony that was improperly stricken. Further, retroactive application of *Trattler II* will not erode any stability interests. *See People in Interest of C.A.K.*, 652 P.2d at 608 ("It is the stability factor that more strongly mandates prospectivity here. By the time a termination proceeding reaches trial, the child has usually been subjected to a great deal of emotional trauma."); *see also Ground Water Comm'n v. Shanks*, 658 P.2d 847, 849 (Colo. 1983) (applying a judicial decision prospectively because "[o]ur system of water law is designed to promote the orderly and stable development of Colorado's water resources ... upsetting long held rights would not advance these goals.").

Defendants fail to show any hardship created by retroactive application. *See Marinez*, 746 P.2d at 559 ("It is the State Fund's burden to prove its contention that serious adverse consequences to insurers would result from retroactive application"); *Martin Marietta Corp.*, 823 P.2d at 114 ("the responsibility of demonstrating the likelihood of serious adverse consequences resulting from the retroactive application of a judicial decision rightly falls on Martin Marietta.").

Instead, they argue that because plaintiffs "created the situation they now complain of" it would be inequitable—and therefore unjust—for them to take the opposite position on appeal. For the reasons discussed in Section III below, however, we discern nothing inequitable per se in allowing a party on appeal to obtain the benefits of a post-trial supreme court decision.

Moreover, applying *Trattler II* retroactively benefits all parties. As also discussed in Section III below, two of defendants' experts who were stricken based on failure to disclose testimonial history shall be allowed to testify on retrial. Thus, while defendants face the risk of an adverse outcome on retrial, because this factor is common to all retroactive applications it cannot establish hardship or injustice in the absence of vested rights or stability interests as discussed above.

Accordingly, we conclude that the three-part test for determining retroactive application of a judicial decision requires us to apply *Trattler II* here.

### III. Invited Error

We next address and reject defendants' contention that the doctrines of invited error and judicial estoppel preclude plaintiffs from relying on *Trattler II*.

■ The judicial estoppel doctrine requires "parties to maintain a consistency of positions in the proceedings, assuring promotion of truth and preventing the parties from deliberately shifting positions to suit the exigencies of the moment." *Estate of Burford v. Burford*, 935 P.2d 943, 947 (Colo. 1997).

■ The invited error doctrine prevents a party from inducing an erroneous ruling and then seeking to benefit by appealing that error. A party's affirmative action during litigation triggers this doctrine and usually bars appellate review of any alleged error arising from such action. *Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 65 (Colo.App.2004).

Here, defendants argue that because plaintiffs moved to strike their experts for failure fully to disclose testimonial history based on *Carlson, Svendsen,* and *Trattler I*, plaintiffs cannot now change their position and rely on *Trattler II* to argue that the trial court erred by striking their own expert for the same reasons. We are not persuaded.

For judicial estoppel to apply, five circumstances must be present, including "the inconsistency must be part of an intentional effort to mislead the court." *American Guarantee and Liability Ins. Company v. King,* 97 P.3d 161, 167 (Colo.App.2003). But here plaintiffs did not mislead the trial court because at the time of the trial, Carlson and Svendsen were final, published decisions of this court to be "followed as precedent by the trial judges of the state of Colorado." C.A.R. 35(f). The supreme court granted certiorari in *Trattler I* after judgment had entered.

Under the invited error doctrine, a party is prevented from "inducing an inappropriate or erroneous [ruling] and then later seeking to profit from that error." *Horton v. Suthers,* 43 P.3d 611, 618 (Colo.2002). However, based on *Carlson* and *Svendsen,* here plaintiffs did not induce any error. *See Henderson v. S.C. Loveland Co., Inc.,* 396 F.Supp. 658, 660 (N.D.Fla.1975)(rejecting similar invited error argument because "under the law, as the court and the parties understood it to be, there was no error, and there was no other position Loveland could have taken at the time.").

Defendants cite no case in Colorado applying these doctrines to preclude an appellant from relying on a post-trial supreme court opinion despite having argued otherwise below based on cases overruled by that opinion. We reject such a limitation because it would frustrate the general application of judicial decisions retroactively. Further, "[a] contrary rule would induce parties to drown the trial judge with reservations." *United States v. Charley,* 189 F.3d 1251, 1279 (10th Cir. 1999) (Holloway, J., concurring) (quoting *McKnight v. General Motors,* 908 F.2d 104, 108 (7th Cir.1990)).

We are not persuaded otherwise by defendants' reliance on *Maiz v. Virani,* 253 F.3d 641 (11th Cir.2001), and *United States v. Tandon,* 111 F.3d 482 (6th Cir.1997). These cases held that invited error precluded appellate challenge to jury instructions requested below which were rendered incorrect by an intervening change in governing law. Both of them explained that because the change was foreshadowed, taking a contrary position "would not necessarily have been futile." *Tandon,* 111 F.3d at 489; *Maiz,* 253 F.3d at 677.

Here, in contrast, the supreme court had denied certiorari in *Svendsen* and granted certiorari on another ground in *Carlson,* which it affirmed. We discern nothing in our supreme court's prior C.R.C.P. 37(c)(1) cases that predicted *Trattler II.* Defendants cite no trend in federal cases interpreting the comparable federal rule that foretold *Trattler II. See Hensley v. CSX Transportation, Inc.,* No. E2007–00323–COA–R3–CV, 2008 WL 683755 (Tenn.Ct.App. Mar.14, 2008) (applying invited error to a party that had requested a contributory negligence instruction, although pending appeal the state's highest court adopted comparative negligence, because of "a raging debate [over] comparative versus contributory negligence," Tennessee being "one of only a handful of states still using the traditional all-or-nothing approach," and language in a prior Tennessee Supreme Court case that "put everyone on notice of a possible change fifteen years earlier.").

Accordingly, we conclude that neither invited error nor judicial estoppel precludes plaintiffs from relying on *Trattler II.*

## IV. *Trattler II*

Finally, we agree with plaintiffs that under *Trattler II* the trial court erred by striking one of their expert witnesses for failure fully to disclose testimonial history. Plaintiffs concede, and we agree, that for the same reason the trial court erred by striking two of defendants' experts.

The *Trattler II* majority held that C.R.C.P. 37(c)(1) "only requires the preclusion of undisclosed evidence." 182 P.3d at 682. Unlike cases precluding expert testimony where the fact that the expert would be testifying was not timely disclosed, *see Cook* and *Todd,* the undisclosed information in *Trattler II,* as here, was *only* a portion of the expert's testimonial history. However, the majority explained that because "precluding the experts' undisclosed testimonial history would have been an inappropriate sanction in that it would have further disadvantaged the

defendants who sought to use the testimonial history to cross-examine the experts at trial, the [trial] court should have looked to the alternative sanctions" in C.R.C.P. 37(c)(1). *Id.* at 682.

Here, concerning two of defendants' experts the trial court explained:

> I think the *Svendsen* case is rather inflexible. And it reaffirms the concept that the failure to disclose is not harmless almost as a matter of law.
>
> . . .
>
> So it seems to me the disclosures were not made and were not made prior to the deposition; that Rule 37 *compels* that the witness not be allowed to testify.

(Emphasis added.) Then as to plaintiffs' expert, the court said:

> [The expert] has testified that there are probably some trials missing and the rule is very clear that you have to list both deposition and trial testimony.
>
> . . .
>
> So for those same reasons, I'll exclude [the expert's] testimony.

Observing that a C.R.C.P. 37 sanction "is automatic and self-executing," the court did not consider any of the alternative sanctions in C.R.C.P. 37(c)(1).

Because this analysis was rejected in *Trattler II*, we conclude that the trial court erred by striking these three expert witnesses. We are not persuaded otherwise by defendants' argument that the trial court acted within its discretion because C.R.C.P. 37(b)(2)(B) permits preclusion of evidence for nondisclosure.

C.R.C.P. 37(c)(1) provides that a court "may impose other appropriate sanctions, which . . . may include any of the actions authorized pursuant to subsections (b)(2)(A), (b)(2)(B), and (b)(2)(C) of this Rule." C.R.C.P. 37(b)(2)(B) authorizes an order "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence."

Here, as in *Trattler II*, the trial court did not consider C.R.C.P. 37(b)(2)(B) because it believed C.R.C.P. 37(c)(1) required preclu-

sion of the experts. However, even if the trial court had done so, as explained in *Trattler II*, "[t]o properly exercise its discretion to impose an appropriate sanction, the trial court should first look to the nature and severity of the violation and then to the alternative sanctions specified in the rule." 182 P.3d at 682. Here, as in *Trattler II*, the record does not show that plaintiffs were to blame for the incomplete disclosure at issue, which was a factor in the majority's conclusion that preclusion was a disproportionate sanction.

Thus, on remand the trial court "may consider rescheduling depositions or trial, payment of attorney fees and costs, contempt proceedings against the experts, admitting evidence of the noncompliance, instructing the jury that noncompliance may reflect on the credibility of the witness, or any other sanction directly commensurate with the prejudice caused." *Trattler II*, 182 P.3d at 683. But we conclude that preclusion of expert testimony for incomplete disclosure of testimonial history, absent bad faith, would be disproportionate. *Id.* at 683

Accordingly, we further conclude that the trial court erred by striking one of plaintiffs' experts and two of defendants' experts for failure to provide complete testimonial histories.

Having so concluded, we need not address plaintiffs' alternate argument that their failure fully to disclose the expert's testimonial history was substantially justified or harmless. *See Trattler II*, 182 P.3d at 680. And because it is unlikely to occur on retrial, we also need not address plaintiffs' remaining contention that the trial court erred by excluding the rebuttal testimony of an expert witness who was unavailable without a very short continuance.

## V. Cross–Appeal

As noted above, we agree with defendants that their two experts who were stricken for failure fully to disclose testimonial histories should be allowed to testify on retrial. However, as to defendants' third expert, who was stricken for other reasons, *Trattler II* does not apply.

We decline to address defendants' contention on cross-appeal that the trial court erred by striking this expert because he "was not endorsed or made available" before the deadline for expert depositions.

According to defendants' Statement of Relevant Facts:

Plaintiffs argued that [the expert] should be precluded from testifying because his deposition was not taken before ... the court imposed deadline. [The expert's] father-in-law was terminally ill with cancer and [the expert's] wife had to travel to visit her father while [the expert] took care of their two small children.

However, defendants make no argument and cite no authority as to why the trial court's ruling striking this witness was an abuse of discretion. *See People in Interest of D.B.-J.*, 89 P.3d 530, 531 (Colo.App.2004) (declining to address contention lacking references to supporting facts, specific arguments, or authorities).

Reversal and remand for a new trial does not automatically reopen discovery. *See Cleveland By and Through Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1449 (10th Cir.1993)("Our remand for a new trial was not an invitation to reopen discovery for newly retained expert witnesses and to enlarge trial time unnecessarily through the addition of totally new exhibits and testimony."); *cf. Todd*, 980 P.2d 973, 977 (Colo.1999) ("when the trial court grants a continuance for reasons unrelated to discovery issues, postponement of the trial date does not automatically create a parallel postponement of discovery deadlines.").

However, our holding does not preclude defendants from moving the trial court for leave to reopen discovery to afford plaintiffs an opportunity to depose their third expert, and on the basis of such a deposition, if it is allowed, to request that the court reconsider its ruling striking this expert.

## VI. Cost Award

Given our conclusion that the underlying judgment must be reversed, the award of costs against plaintiffs is vacated. *See Nich-ols v. Burlington Northern & Santa Fe Ry.*, 56 P.3d 106, 110 (Colo.App. 2002).

The judgment is reversed and the case is remanded with directions.

Judge LOEB and Judge GABRIEL concur.